RECEIVED
IN ALEXANDRIA, LA.
JUL 2 0 2009
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DONALD J. SPEARS, SR. AND CONSTANCE E. SPEARS | : | DOCKET NO. 07-1701 |
| VS. | : | JUDGE TRIMBLE |
| CINTAS SALES CORPORATION, ET AL | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (doc. #28) filed by defendants, Cintas Sales Corporation, Cintas Corporation No. 2, and Cintas Corporation No. 81 (collectively referred to as "Cintas") wherein the movers seek judgment pursuant to Federal Rule of Civil Procedure 56(c) dismissing Plaintiffs' causes of action under the Louisiana Products Liability Act and Louisiana Civil Code article 2315 because there are allegedly no genuine issues of material fact and Cintas is entitled to judgment in its favor as a matter of law. For the following reasons, the motion will be granted.

## FACTUAL STATEMENT

This case is about injuries received by Plaintiff, Donald Spears, on November 3, 2005, while he was attempting to start an off road diesel dump truck while working for Apeck Construction Company ("Apeck"). During this process, the dump truck backfired and Mr. Spears' clothing caught on fire causing him severe burn injuries. Mr. Spears declares that the Cintas uniform he was wearing immediately burst into flames.[1] In 2003, a contract was entered into and signed by Joey Williams,

---

[1] Plaintiffs' exhibit 15, Affidavit of Donald Spears, ¶ 3.

the President of Apeck, wherein Cintas would provide uniforms to Apeck's employees.[2] The Apeck employees would purchase the uniforms and Apeck withheld the amounts out of their paychecks. However, Apeck offered the uniform program to Mr. Spears as a "perk" two to three weeks before the accident occurred because his clothes were getting filthy from the mechanic work. Cintas alleges that most of the Apeck employees, including plaintiff, chose the 65% polyester 35% cotton blended uniforms. Mr. Spears denies that he had a choice between any different material compositions of the uniforms.[3]

Mr. Spears, the shop superintendent of Apeck, is a career diesel mechanic. On the date of the incident, Apeck employees were changing a fuel filter on a Terex Hauler – a huge dump truck.[4] When a fuel filter is changed on a diesel engine, air enters into the injection system.[5] Because a diesel engine cannot be started with air in the system, the mechanic will use ether or place a gas-soaked rag over the air intake valve.[6] Cintas alleges that the use of a gas-soaked rag to start a diesel engine violated Apeck policy. Cintas relies on the testimony of Joey Williams who testified that had he known that a gas rag was being used, he would not have allowed it because "we just don't

---

[2] Plaintiffs' exhibit 9, Depo. of Joey Williams, pp. 17-19, 23; see also Cintas Standard Rental Uniform Rental Service Agreement, Defendants' exhibit B.

[3] Plaintiffs' exhibit 15, Aff. of Donald Spears, ¶ 5.

[4] Defendants' exhibit A, p. 29, line 16.

[5] *Id.* at line 18, 19.

[6] Defendants' exhibit A, p. 30, lines 10, 11; Plaintiffs' exhibit 1, Depo. of Charles Carhee, pp. 16-17; Plaintiffs' exhibit 5, Depo. of Donald Spears, pp. 27, 37; Plaintiffs' exhibit 6, Depo. of Ronald Spears, pp. 36-37, 42-43, 85; Plaintiffs' exhibit 8, Depo. of Charles Williams, pp. 8-9; Plaintiffs' exhibit 15, Aff. of Donald Spears.

use open gas in our shop."⁷ Plaintiffs allege that prior to the incident, there was no policy against using a gas-soaked rag to start a diesel engine.⁸ Stacy Williams, the vice-president of Apeck and one of its owners, testified that he would not have stopped Donald Spears from using the gas rag to start the diesel engine had he seen him using it.⁹

Plaintiffs maintain that there are numerous genuine issues of material fact for trial which are as follows:

(1) whether Mr. Spears' wearing of the Cintas uniform was a reasonably anticipated use of the uniform;
(2) whether the use of a gas rag to start a diesel engine is an accepted common procedure or an act which unreasonably places one in harm's way;
(3) whether a mechanic should have known that a V8 Detroit diesel engine could backfire in the manner in which it did during Mr. Spears' accident;
(4) whether it was obvious to the user of the uniform that it could instantly ignite, was difficult to extinguish once ignited, if ignited would melt and fuse to the user's body, and if ignited, would enhance injuries which would otherwise be sustained by the user;
(5) whether Donald Spears' injuries were caused by the Cintas uniform.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."¹⁰ A fact is "material" if its existence or

---

⁷ Defendants' exhibit D, p. 53, lines 4-14.

⁸ Plaintiffs' exhibit 9, Depo. of Stacy Williams, p. 90; Plaintiffs' exhibit 5, Depo. of Donald Spears, pp. 39, 87.

⁹ Plaintiffs' exhibit 10. Depo. of Stay Williams, p. 53.

¹⁰ Fed. R.Civ. P. 56(c).

3

nonexistence "might affect the outcome of the suit under governing law."[11] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[12] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[13] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[14] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[15] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[16] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[17]

## LAW AND ANALYSIS

Plaintiffs allege that Cintas is liable to them for all damages sustained for violations of the Louisiana Products Liability Act and other applicable law. Specifically, Plaintiffs allege that the

---

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[12] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[13] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[14] *Anderson*, 477 U.S. at 249.

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Anderson*, 477 U.S. at 249-50.

4

uniform was unreasonably dangerous in construction, composition, or in design, and that Cintas failed to provide any warning of the uniform's dangerous propensities. Plaintiffs further allege that Cintas had knowledge, or should have known of the defects of the uniform and its potential dangers to Donald Spears. Additionally, Plaintiffs allege that Cintas was negligent in washing or cleaning the uniform and/or possibly contaminating the clothing with a flammability-enhancing substance. However, Plaintiffs have conceded that they have not been able to develop any competent evidence that the Cintas uniform was negligently laundered.[18]

Louisiana Revised Statute 9:2800.54(A) provides that a Plaintiff must show: (1) that the defendant is a manufacturer of the product; (2) that the damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the damage arose from a reasonably anticipated use of the product by the claimant or someone else. Cintas does not dispute that they are the manufacturer of the product, rather they contend that Plaintiffs cannot present sufficient evidence to prove that their damages (1) were proximately caused by a characteristic of the Cintas uniform that rendered it unreasonably dangerous, and (2) arose from a reasonably anticipated use of the uniform.

*Reasonably anticipated use*

Cintas maintains that the undisputed facts show that Plaintiff was using the subject uniform in a manner that could not be reasonably expected of an ordinary person in the same or similar circumstance. Cintas argues that it could not have reasonably anticipated that a non-flame retardant uniform would be worn while attempting to cold start a diesel engine by holding a gas soaked rag over the engine's air intake valve adjacent to an open bucket of gasoline.

---

[18] Plaintiffs' opposition brief, p. 24.

Whether plaintiff's damages arose from a "reasonably anticipated use" of the Cintas uniform is a threshold question.[19] If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous" question need not be reached.[20] Louisiana Revised Statue 9:2800.53(7) defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." In determining what constitutes a reasonably anticipated use, courts must engage in an objective inquiry and "ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture."[21] A manufacturer will not be responsible for "every conceivable foreseeable use of a product."[22] Hence, under the Louisiana Products Liability Act liability scheme, Mr. Spears' injuries must have arisen from a reasonably anticipated use of the uniform. Having considered the analysis in *Kampen, supra,* wherein the court defined "use" of a product at a level of generality that takes into account the risks the manufacturer must or should have reasonably contemplated when designing the product and providing warnings for its use, we must determine if there is a genuine issue of material fact for trial as to Mr. Spear's use of the uniform when he was injured.

Cintas maintains that Mr. Spears' use of the uniform while trying to start a diesel engine with a gas soaked rag with an open bucket of gasoline within two (2) to three(3) feet of himself, was not

---

[19] *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998).

[20] *Delphen v. Department of Transportation and Development,* 657 So.2d 328, 334 (La.App. 4th Cir. 1995).

[21] *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998).

[22] *London v. MAC Corp. Of America,* 44 F.3d 316 (5th Cir. 1995).

6

a use that Cintas could have reasonably anticipated. Cintas argues that Mr. Spears violated company policy by taking a short cut when he used a gas soaked rag to start an engine in lieu of using ether and also by using an open bucket of gasoline. Cintas contends that Mr. Spears exposed himself to an open and obvious danger by using the gas soaked rag to start the engine.

Plaintiffs argue that Cintas knew or should have known since they laundered the uniforms that the clothing was exposed to grease, gasoline, lubricants and other chemicals and that the mechanics would be working on engines, both gasoline and diesel, which could expose them to flammability risks. Plaintiffs submit that despite that knowledge, Cintas provided Mr. Spears with a uniform which was not designed for use in areas of flammability risks and would almost immediately ignite, melt to the user's body, and increase the severity of injuries which would otherwise be sustained.

Mr. Spears used the uniform every day as he performed diesel mechanic duties. Plaintiffs have submitted summary judgment evidence of the flammability risks associated with his job which include the use of welding equipment and blowtorches, exposure to grease, gasoline, lubricants and other chemicals, and working on both gasoline and diesel engines.[23] Plaintiffs have further submitted summary judgment evidence wherein most of the mechanics at Apeck testified that using a gas soaked rag was not out of the ordinary, but a common practice.[24] There is also some testimony that

---

[23] Plaintiffs' exhibit 11, Aff. of Joey Williams; Plaintiffs' exhibit 15, Aff. of Donald Spears; Plaintiffs' exhibit 1, Depo. of Charles Carhee, p. 67; Plaintiffs' exhibit 12, Aff. of Gordon Damant, ¶ 13.

[24] Plaintiffs' exhibit 5, Depo. of Donald Spears, p. 27; Plaintiffs' exhibit 1, Depo. of Charles Carhee, pp. 16-176, 65-66; Plaintiffs' exhibit 6, Depo. of Ronald Spears, pp. 36-37, 42-43, 85; Plaintiffs' exhibit 10, Depo. of Stacy Williams, pp. 53, 127-129; Plaintiffs exhibit 9, Depo. of Joey Williams, pp. 53, 68; Plaintiffs' exhibit 8, Depo. of Charles Williams, pp. 8-9.

even though ether was the first choice, it either had a greater propensity to ignite, or, the use of ether would have caused the same result.[25]

Cintas, in relation to this case, manufactures, rents, and launders uniforms to be worn by people in varying occupations. The Standard Uniform Rental Agreement between Cintas and Apeck includes the following clear and unambiguous language:

> Unless specified otherwise, the garments supplied under this agreement are not flame retardant or acid resistant and contain no special flame retardant or acid resistant features. Customer agrees to notify its employees that their garments are not designed for use in areas of flammability risk or where contact with hazardous materials is possible. Customer warrants that none of the employees for whom garments are supplied under this agreement require flame retardant or acid resistant clothing.[26]

There is evidence in the record that a Cintas sales person made a sales pitch in the Cintas mechanic shop, and it is contended that this should have alerted Cintas to the fact that because there were welding machines and blow torches located in the shop where the mechanics worked on gasoline and diesel engines, Cintas should be charged with knowledge of an obvious flammability risk.

This Court disagrees with that reasoning. The contract states in clear and unequivocal terms that not only are the garments supplied by defendant not flame retardant, but Apeck warranted that none of the employees for whom the garments were supplied required flame retardant or acid resistant clothing. The president of the company testified under oath that he was not aware that a gasoline soaked rag was being used to start a diesel engine and further stated that "we just don't use

---

[25] Plaintiffs' exhibit 5, Depo. of Donald Spears, pp. 37, 147-140.

[26] Defendants' exhibit B, p. 2.

8

open gas in our shop."[27]

Plaintiff's position, put simply, is that the clear contract language should be ignored and that defendant, because an employee gave the sales talk in the plaintiff's shop, should have knowledge concerning flammabiltiy risks in the shop that the president of the company himself did not have. If the sales person had gone to the top authority in the company for information regarding risks of flammability in the mechanic's shop, he would have been advised that the risks to which Mr. Spears voluntarily exposed himself, i.e., using a gas-soaked rag to start a diesel engine with an open container of gasoline 2-3 feet away, was not a risk that existed in the Apeck shop.

Cintas manufactures, furnishes and launders uniforms. It has a right to rely upon a customer assurance that the uniforms furnished are not required to be flame retardant. Further, a salesman with Cintas should have no duty to personally consult with each individual to whom uniforms are furnished to determine what flammability hazards may be encountered by each Apeck employee, particularly in light of the above contract provisions. Simply because the salesman was in the shop when he addressed the various employees concerning the services supplied by Cintas does not establish that he inspected the shop for existing hazards, nor is this Court aware of any law which imposes such a duty upon him. Conceivably, and quite likely, there are employees in the Apeck shop whose duties never require the risk of flammability, as represented in the language of the contract. Some may be assigned to brake work, others to tires, and others may perform unskilled labor such as fetching tools and keeping the shop clean. This Court finds that the type of business in which Cintas engages does not require it to acquaint itself with what hazards each employee of a company may be confronted, especially a company operating under the terms of the contract in question.

---

[27] Defendants' exhibit D, p. 53, line 14.

In summary, this Court refuses to impute knowledge to Cintas, in the circumstances of this case, of an intended use of its product which was totally inconsistent with the customer's contract and beyond the knowledge of even the president of the company, who would not himself have sanctioned such use if he had been aware of it. This Court finds the use to which Mr. Spears put his uniform was not a reasonably anticipated use of the uniform. Therefore, the plaintiffs' case must fall with this answer to the threshold question. In view of this finding, it is not necessary for the Court to address the remaining issues raised by the other statutory elements of Louisiana products liability claims. As noted above there exists no bases for plaintiffs' negligence claims against Cintas.

## CONCLUSION

In accordance with the foregoing, the Court finds that there is no genuine issue of material fact in either Louisiana products liability law or the law of negligence in Louisiana, and that Cintas is entitled to a judgment in its favor and against plaintiffs, dismissing plaintiffs' demands at their costs. Judgment will be rendered accordingly.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of July, 2009.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE